UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DARMARROE DONTAE TUNSTALL,

                Petitioner,

v.

GARY MINIARD,

                Respondent.

_____/

Case No. 1:25-cv-833

Honorable Phillip J. Green

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.  As part of a preliminary review of the petition under Rule 4 of the Rules Governing § 2254 Cases, the Court noted that it appeared that Petitioner had failed to timely file his petition.  (Op., ECF No. 7.)  The Court therefore entered an order directing Petitioner to show cause within 28 days why his petition should not be dismissed as untimely.  (Order, ECF No. 8.)  The Court received Petitioner's response (ECF No. 9) on September 8, 2025.

Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 6.)  Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases.  The Court is required to conduct this initial review prior to the service of the petition.  Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings.  "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."  *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  *Id.* at 350.  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."  *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights."  *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding— the petitioner.  Because Respondent has not yet been served, the undersigned

2

concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999).

In *Day v. McDonough,* 547 U.S. 198 (2006), the Supreme Court concluded that a district court could *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d), even after the government had forfeited its timeliness defense by failing to raise that argument in its response. In *Shelton v. United States*, 800 F.3d 292 (6th Cir. 2015), the Sixth Circuit determined that the district court could *sua sponte* dismiss a habeas action as time-barred during the Rule 4 screening process as well. The *Shelton* court made clear, however, that the *Day* Court's requirement that the "district court 'must accord the parties fair notice and an opportunity to present their positions,'" applied to consideration of the timeliness question on Rule 4 preliminary review. *Shelton*, 800 F.3d at 294.

After reviewing Petitioner's response, the Court concludes that Petitioner has not shown cause why his petition should not be dismissed as untimely. Accordingly, the Court will dismiss Petitioner's petition with prejudice as untimely.

## <u>Discussion</u>

### I.    Factual Allegations

Petitioner is incarcerated with the Michigan Department of Corrections at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan. On April 11, 2013, following a jury trial in the Berrien County Circuit Court,

4

Petitioner was convicted in Case No. 2012-002917-FH of one count of conducting a criminal enterprise, in violation of Mich. Comp. Laws § 750.159g, one count of using a computer to commit a crime, in violation of Mich. Comp. Laws § 752.796, and four counts of uttering and publishing, in violation of Mich. Comp. Laws § 750.249. (§ 2254 Pet., ECF No. 1, PageID.2.)  Petitioner was also convicted, in Case No. 2012-002784-FH, of one count of possession with intent to deliver marijuana, in violation of Mich. Comp. Laws § 333.7401(2)(d)(3)(2). (*Id.*)  On May 20, 2013, the trial court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, in Case No. 2012-002917-FH, to "respective concurrent terms of 210 to 320 months, 14 to 240 months, and 12 to 240 months." *People v. Tunstall*, No. 316886, at *1 (Mich. Ct. App. Nov. 20, 2014).  The trial court sentenced Petitioner as a fourth-offense habitual offender in Case No. 2012-002784-FH to 14 to 180 months' imprisonment. *Id.*  "All of [Petitioner's] sentences were to be served concurrently, but consecutive to an underlying parole term." *Id.*

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals.  On November 20, 2014, the court of appeals affirmed Petitioner's convictions but "remand[ed] to the trial court for further consideration of the scoring of [Offense Level (OV)] 12 and resentencing if necessary." *Id.* at *4.  Public dockets reflect that Petitioner did not seek leave to appeal to the Michigan Supreme Court.

The copy of the public docket that Petitioner has attached to his § 2254 petition indicates that on October 5, 2015, the trial court held a hearing, at which time it declined to resentence Petitioner.  (ECF No. 1-7, PageID.59.)  The trial court concluded that OV 12 had been scored correctly and that resentencing was not necessary.  (*Id.*)  The public docket reflects that Petitioner filed an untimely notice of appeal on December 21, 2015, and that a notation was made on January 12, 2016, indicating that the notice of appeal was untimely.  (*Id.*)  Petitioner neither filed a late application for leave to appeal to the Michigan Court of Appeals, nor did not seek leave to appeal further to the Michigan Supreme Court.

Petitioner represents that on December 8, 2017, he filed a state habeas corpus petition challenging the legality of his detention.  (§ 2254 Pet., ECF No. 1, PageID.3.)  Petitioner indicates that the Ionia County Circuit Court denied the petition on January 13, 2018.  (*Id.*)  Petitioner filed a second state habeas corpus petition in the Chippewa County Circuit Court, which he represents was denied on June 7, 2021.  (*Id.*)

On September 23, 2019, Petitioner returned to the trial court and filed a motion for relief from judgment pursuant to Michigan Court Rule 6.502.  (ECF No. 1-7, PageID.59.)  In an opinion and order entered on February 12, 2020, the trial court partially denied the Rule 6.502 motion and directed that the prosecutor file a response to Petitioner's remaining claims for relief.  (*Id.*)  Petitioner represents that

6

the trial court denied his Rule 6.502 motion on August 4, 2020. (§ 2254 Pet., ECF No. 1, PageID.4.)

Public dockets reflect that on October 4, 2021, Petitioner filed a delayed motion for leave to appeal the denial of his Rule 6.502 motion to the Michigan Court of Appeals. *See* Register of Actions, *People v. Tunstall*, No. 358797 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/358797 (last visited July 31, 2025). The Michigan Court of Appeals dismissed the delayed application for lack of jurisdiction on November 2, 2021. *Id.* Petitioner sought reconsideration of that dismissal, which the court of appeals denied on December 16, 2021. *Id.* Petitioner then filed an application for leave to appeal to the Michigan Supreme Court. *Id.* In an order entered on April 5, 2022, the supreme court vacated the court of appeals' dismissal and remanded the matter to the court of appeals with instructions to treat Petitioner's delayed application for leave to appeal "as having been filed within the deadlines set forth in MCR 7.205(A)(4)." *People v. Tunstall*, 971 N.W.2d 646 (Mich. 2022). In an order entered on April 14, 2022, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal because Petitioner had "failed to establish that the trial court erred in denying the motion for relief from judgment." *See* Register of Actions, *People v. Tunstall*, No. 358797 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/358797 (last visited July 31, 2025). On July 20, 2022, the Michigan Supreme Court denied Petitioner's application

7

for leave to appeal to that court. *See People v. Tunstall*, 977 N.W.2d 569 (Mich. 2022). Petitioner's subsequent motion for reconsideration was denied by the supreme court on October 31, 2022. *See* Register of Actions, *People v. Tunstall*, No. 358797 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/358797 (last visited July 31, 2025).

Petitioner represents that on April 10, 2023, the Berrien County chief judge entered an order reviewing the denial of Petitioner's Rule 6.502 motion and a motion that Petitioner had filed to recuse Judge Lasata. (§ 2254 Pet., ECF No. 1, PageID.4.) The chief judge affirmed the denial of the motion for relief from judgment and the motion to recuse. (*Id.*) On September 8, 2023, Petitioner filed a delayed application for leave to appeal that order to the Michigan Court of Appeals. *See* Register of Actions, *People v. Tunstall*, No. 367665 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/367665 (last visited July 31, 2025). On January 26, 2024, the court of appeals denied the delayed application for leave to appeal because Petitioner had "failed to establish that the trial court erred in denying the motion for relief from judgment or abused its discretion when it denied the motion to disqualify." *Id.* On May 29, 2024, the Michigan Supreme Court denied Petitioner's application for leave to appeal. *See People v. Tunstall*, 6 N.W.3d 383 (Mich. 2024).

8

The Court received Petitioner's § 2254 petition on July 25, 2025.  Petitioner raises the following grounds for relief in his petition:

I.      Fraud on the court.

II.     Petitioner was denied his fundamental due process and equal protection rights to [a] fair trial guaranteed by the 5th, 6th, and 14th Amendment[s], due to prosecutorial misconduct, knowingly using evidence from a[n] unrelated case against the Petitioner, and allowing the police to manufactur[e] a laptop and incriminating software against the Petitioner, to frame him for a "use of computer" crime under the fraudulent felony complaint 12-5253C.

III.    Berrien County prosecutor Mark Sanford violated Petitioner's 5th, 6th, and 14th Amendment rights to a fair trial by knowingly conduct[ing] a trial under false pretense[s], where the prosecutor intentionally allowed and used perjured testimony to maliciously prosecute the Petitioner under the fraudulent complaint 12-5253C.

(§ 2254 Pet., ECF No. 1, PageID.6, 8–10.)

Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *See Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner dated his § 2254 petition as of July 11, 2025. (§ 2254 Pet., ECF No. 34.)  Although the envelope in which the petition was mailed was not postmarked until July 22, 2025 (*id.*, PageID.36), under Sixth Circuit precedent, the Court deems Petitioner's § 2254 petition filed as of July 11, 2025, the date Petitioner signed his petition.  *See Cook*, 295 F.3d at 521.

## II.    Statute of Limitations

Petitioner's application appears to be barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

### A.    Timeliness Under § 2244(d)(1)(A)

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured.  Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of

direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). As set forth *supra*, the trial court declined to resentence Petitioner on October 5, 2015, after concluding that OV 12 had been scored correctly and that resentencing was not necessary. (ECF No. 1-7, PageID.59.) Petitioner filed an untimely notice of appeal of that decision on December 21, 2015. (*Id.*)

Where a petitioner has failed to pursue an avenue of appellate review available to him, the time for seeking review at that level is counted under § 2244(d)(1)(A). *See* 28 U.S.C. § 2244(d)(1)(A) (stating that the time for filing a petition pursuant to § 2254 runs from "the date on which the judgment became final by the conclusion of direct review *or the expiration of time for seeking such review*" (emphasis added)). However, such a petitioner is not entitled to also count the 90-day period during which he could have filed a petition for certiorari to the United States Supreme Court. *See Gonzalez v. Thaler*, 565 U.S. 134, 152–53 (2012) (holding that, because the Supreme Court can review only judgments of a state's highest court, where a petitioner fails to seek review in the state's highest court, the judgment becomes final when the petitioner's time for seeking that review expires).

Under Michigan law, an appeal of right in a criminal case must be taken within: (1) 42 days "after entry of an order denying a timely motion for the appointment of a lawyer"; (2) 42 days "after entry of the judgment or order appealed from"; or (3) 42 days "after the entry of an order denying a motion for a new trial, for directed verdict of acquittal, or to correct an invalid sentence." *See* Mich. Ct. R. 7.204(A)(2). Here, although Petitioner did file a notice of appeal after the decision

11

made by the trial court on October 5, 2015, he did not do so within the 42-day period set forth in Rule 7.204(A)(2).

The Michigan Court Rules permit a defendant to filed a delayed application for leave to appeal within the later of: (1) six months after entry of the judgment or order being appealed, or (2) 42 days after (a) an order appointing appellate counsel or substitute counsel, if the defendant requested counsel within six months after entry of the judgment or order, (b) the filing of transcripts if the defendant requested counsel within six months after entry of the judgment or order, (c) the filing of transcripts if the defendant requested transcripts within six months of the judgment or order, (d) an order deciding a timely-filed motion to withdraw plea, motion for directed verdict, motion to correct an invalid sentence, or motion for new trial, or (e) an order deciding a timely-motion for reconsideration of an order denying one of those four motions. *See* Mich. Ct. R. 7.205(A)(2). Here, Petitioner does not provide any indication that the 42-day period would apply. Thus, Petitioner's judgment of conviction became final as of Tuesday, April 5, 2016, six months after the trial court declined to resentence him on October 5, 2015. Petitioner, therefore, had one year from that date,[2] until Wednesday, April 5, 2017, to file his § 2254 petition. As set forth above, Petitioner filed his § 2254 petition on July 11, 2025. Obviously, absent tolling, Petitioner filed more than eight years after the time for direct review expired.

---

[2] The Sixth Circuit recently confirmed that the one-year period of limitation runs to and includes the anniversary of the finality date. *See Moss v. Miniard*, 62 F.4th 1002, 1009–10 (6th Cir. 2023).

### B.    Statutory Tolling

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").

Here, Petitioner represents that the first post-conviction application he filed was a state habeas corpus petition, which he avers that he filed on December 8, 2017. (§ 2254 Pet., ECF No. 1, PageID.3.)  Even presuming that a state habeas corpus petition is a "properly filed application for State post-conviction or other collateral view" that serves to statutorily toll the limitations period, Petitioner filed that state habeas corpus petition, as well as his other state habeas corpus petition and his Rule 6.502 motion, well after the one-year limitations period for purposes of AEDPA expired on April 5, 2017.  Thus, these filings did not serve to "revive" the one-year AEDPA limitations period; the statutory tolling provision does not "restart the clock . . . it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (internal quotation marks omitted).  When the limitations period has expired, "collateral petitions can no longer serve to avoid a statute of limitations." *Id.*

Therefore, for the reasons set forth above, it does not appear that Petitioner is entitled to any statutory tolling since the one-year limitations period had already

expired by the time he sought post-conviction relief in the trial court, two other circuit courts, and the Michigan appellate courts. Thus, the one-year limitations period expired on April 5, 2017, and Petitioner's § 2254 petition, filed on July 11, 2025, is clearly untimely.

### C.    Equitable Tolling

The one-year limitations period applicable to § 2254 is also subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner bears the burden of showing that he is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling relief should be granted "sparingly." *See, e.g., Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011), *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006); *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). A petitioner seeking equitable tolling must show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner does not raise any arguments regarding equitable tolling. The fact that Petitioner is untrained in the law, is proceeding without an attorney, or may have been unaware of the statute of limitations also does not warrant tolling. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and excuse his late filing."); *Allen v. Yukins*, 366 F.3d at

14

403 ("'[I]gnorance of the law alone is not sufficient to warrant equitable tolling.'")
(quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)).  Accordingly, Petitioner
has not demonstrated that he is entitled to equitable tolling of the statute of
limitations.

### D.    Actual Innocence

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that a
habeas petitioner who can show actual innocence under the rigorous standard of
*Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute
of limitations under the miscarriage-of-justice exception.   "'[A]ctual innocence' is
factual innocence." *Bousley v. United States*, 523, U.S. 614, 624 (1998).

In order to make a showing of actual innocence under *Schlup*, a petitioner must
present new evidence showing that "it is more likely than not that no reasonable juror
would have convicted [the petitioner.]" *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*,
513 U.S. at 327 (addressing actual innocence as an exception to procedural default)).
Because actual innocence provides an exception to the statute of limitations rather
than a basis for equitable tolling, a petitioner who can make a showing of actual
innocence need not demonstrate reasonable diligence in bringing his claim, though a
court may consider the timing of the claim in determining the credibility of the
evidence of actual innocence.  *Id.* at 399–400.

Here, Petitioner contends that he has newly discovered evidence of his actual
innocence in the form of emails from Lyndi Shepardson the Department Clerk for the
Berrien County Sheriff's Office.  (§ 2254 Pet., ECF No. 1, PageID.6.)  Petitioner

15

asserts that on December 30, 2024, a woman named Stephanie Andrews filed a
Freedom of Information Act (FOIA) request on Petitioner's behalf with the Berrien
County Sheriff's Department, requesting a copy of Petitioner's April 1, 2012, incident
report "under the Berrien County Sheriff's Department complaint 12-5253C."  (*Id.*)
According to Petitioner, Ms. Shepardson advised Ms. Andrews that while there was
a "12-5253 incident report," there was no report under 12-5253C.  (*Id.*)  Ms.
Shepardson also told Ms. Andrews that the 12-5253C is not a Berrien County Sheriff's
Department report number, "because their numbers do not have letters in them."
(*Id.*)  Petitioner avers that based upon these emails, the felony complaint under which
he is detained is fraudulent.  (*Id.*)

In its August 15, 2025, opinion, the Court noted that Petitioner had not
provided copies of the emails to which he refers.  Petitioner has now provided those
emails, as well as a copy of the Affidavit for Search Warrant issued in his criminal
case, with his response.  (ECF Nos. 10-1, 10-2.)  While those emails do demonstrate
that Ms. Shepardson told Ms. Anderson, with respect to Ms. Anderson's request as to
whether 12-5253C was a Berrien County Sheriff's Department report: "It is a Berrien
County report but our reports but we don't have letters on the end of reports." (ECF
No. 10-1, PageID.152.)

Conspicuously absent from Petitioner's submissions to this Court is any
explanation of the source of his claim that he was prosecuted under an April 1, 2012,
incident report that the Berrien County Sheriff's Department designated 12-5253***C***.
The department advised Petitioner, through Ms. Andrews, that the incident report

for Petitioner's crimes was 12-5253.  According to the documents that Petitioner has supplied, the department provided that incident report.  Petitioner does not contend otherwise.

Petitioner was brought into the Berrien County district court by a criminal complaint related to the operation of a criminal enterprise.  He attached the complaint to his petition.  (ECF No. 1-4.)  The correspondence and other attachments he submitted with his initial petition and then his amendment make clear that Petitioner has been fully aware of the complaint and its contents since the very beginning of his criminal prosecution.  But, the complaint is not identified by the purportedly fraudulent designation 12-5253C—the proof of his actual innocence.  The complaint does, however, refer to a police agency report number of "90 12-5253C." (ECF No. 1-4, PageID. 41.)  Petitioner was arraigned on the complaint on July 24, 2012.  (ECF No. 1-7, PageID.52.)  The court held a preliminary examination on August 23, 2012.  (*Id*.)  Petitioner was bound over to the circuit court on six of the seven charges.  (*Id*.)

Once Petitioner was bound over to the circuit court, the complaint played no further role in his criminal prosecution.  The operative complaint was replaced by an information filed by the prosecutor.  (*Id*.; ECF No. 1-6.)  The information also identified the police agency report number as "90 12-5253C."  (ECF No. 1-6, PageID.47.)

Petitioner does not explain, and the Court does not discern, how the designation of the police report as "90 12-5253C" versus "12-5253" had any impact on

his criminal prosecution where Petitioner had the police reports, the complaint, and the information.  Petitioner's description of the difference as "fraudulent" is absurd. The difference certainly fails to demonstrate Petitioner's innocence.

Moreover, as the Court previously explained, Petitioner is not currently in custody pursuant to the felony complaint under which he was charged and arraigned in the district court or the felony information under which he was arraigned and prosecuted in the circuit court.  Instead, he is in custody pursuant to the Judgment of Sentence issued by the trial court after Petitioner was convicted by a jury trial and sentenced for his crimes.  The difference between "90 12-5253C" and "12-5253" could not possibly have had any bearing on the jury's determination of Petitioner's guilt or the trial judge's determination of Petitioner's sentence.

Perhaps Petitioner believes that the difference renders him innocent because the trial court lacked jurisdiction over the criminal proceedings because of the "fraud" Petitioner has identified.  Such a claim does not relate to factual innocence.  *See, e.g.*, *Logan v. Kelley*, No. 15-3879, 2016 WL 11786288, at *2 (6th Cir. Apr. 4, 2016) (stating "the state court's alleged lack of jurisdiction to try him does not . . . establish his actual innocence"); *Casey v. Tenn.*, 399 F. App'x 47, 48–49 (6th Cir. 2010) (holding that the petitioner's challenge to the trial court's jurisdiction could not establish factual innocence, only legal sufficiency, which does not justify relief under *Schlup*).

Additionally, such a "fraud" would not deprive the trial court of jurisdiction nor would it warrant any relief following a determination of guilt at trial.  That was the determination of the trial court.  Order, *People v. Tunstall*, Nos. 2012-002917-FH,

18

2012-002784-FH (Berrien Cnty. Cir. Ct., Aug. 4, 2019) (ECF No. 1-8, PageID.67.) Whether or not the procedures in Petitioner's case complied with state law and whether or not any failures deprived the state court of jurisdiction are purely state law questions.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit has recognized "'that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  Specifically as to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).  Thus, this Court is bound by the state court's determination that any jurisdictional challenge based on a fraudulent charging document would have been meritless.

In his response, Petitioner also contends that his actual innocence claim is "deeply rooted in the fact that his attorney failed to investigate the facts of his case." (ECF No. 9, PageID.142.)  Specifically, Petitioner faults trial counsel for not investigating and discovering the fact that the complaint was fraudulent which "would have revealed that the Petitioner had been framed for conducting a criminal enterprise . . . by the Berrien County Sheriff's Department." (*Id.*, PageID.142–43.)

19

However, any alleged ineffectiveness by counsel in failing to challenge the legal sufficiency of the complaint does not relate to whether or not Petitioner is factually innocent of the crimes of which he was convicted.

Thus, for the reasons set forth above, because Petitioner has wholly failed to provide evidence of his actual innocence, he is not excused from the statute of limitations under 28 U.S.C. § 2244(d)(1).

### E.    Timeliness Under § 2244 (d)(1)(B)–(D)

While Petitioner's § 2254 petition appears to be untimely under § 2244(d)(1)(A), that "subsection . . . provides one means of calculating the limitation with regard to the 'application' as a whole . . . but three others . . . require claim-by-claim consideration." *Pace*, 544 U.S. at 416 n.6.  Petitioner provides no assertions that he was impeded from filing his § 2254 petition by State action, nor does he rely upon a new right made retroactively applicable to cases on collateral review.  Thus, §§ 2244(d)(1)(B) and 2244(d)(1)(C) do not apply.

In his response, Petitioner suggests that he is relying upon § 2244(d)(1)(D) to render his § 2254 petition timely filed.  (ECF No. 9, PageID.141–42.)  As set forth above, that subsection provides that the limitations period commences on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  Under § 2244(d)(1)(D), the time under the limitations period begins to run when a petitioner knows, or through due diligence, could have discovered, the important facts for his claims, not when the petitioner recognizes the legal significance of the facts.  *See Redmond v. Jackson*, 295

F. Supp. 2d 767, 771 (E.D. Mich. 2003) (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). "The question under the provision is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care." *Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004). Section 2244(d)(1)(D) "does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim. *Id.* (quoting *Sorce v. Artuz*, 73 F. Supp. 2d 292, 294-95 (E.D.N.Y. 1999))." *Id.* "Rather, it is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits." *Id.* (citing *Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001), and *Flanagan v. Johnson*, 154 F.3d 196, 198–99 (5th Cir. 1998)).

Furthermore, a habeas petitioner has the burden of proof in establishing that he exercised due diligence in searching for the factual predicate of the habeas claims. *Stokes v. Leonard*, 36 Fed. Appx. 801, 804 (6th Cir. 2002). Unsupported and conclusory arguments are insufficient to warrant application of § 2244(d)(1)(D). *Redmond*, 295 F. Supp. 2d at 772; *Grayson v. Grayson*, 185 F. Supp. 2d 747, 750-51 (E.D. Mich. 2002) (holding that a petitioner does not show how the factual predicate could not have been discovered earlier if he fails to indicate the steps he took to discover the claims). The key to deciding whether evidence is 'newly discovered' or

only 'newly available' is to ascertain when the defendant found out about the information at issue." *United States v. Turns*, 198 F.3d 584, 587 (6th Cir. 2000).

As an initial matter, as the Court previously noted, it appears that Petitioner raised his second and third grounds for relief either on direct appeal or in his various post-conviction petitions and motions.  In light of the fact that Petitioner was plainly aware of the factual predicate for those claims at least since he raised them in the state court, the Court declines to apply § 2244(d)(1)(D) to render grounds II and III of his § 2254 petition timely filed.

With respect to his actual innocence and fraud upon the court claims, Petitioner contends that he did not learn that the felony complaint issued against him was allegedly fraudulent until December 30, 2024.  (ECF No. 9, PageID.142.) Petitioner asserts "at the time of his state proceedings he did not have outside support to help him obtain the [emails and incident report discussed above]." (*Id.*)  Petitioner claims that "prior to meeting Ms. Andrews, he had no way of obtaining the evidence himself, because the information had to be obtained through [the Freedom of Information Act (FOIA)], outside the scope of Petitioner's discovery."  (*Id.*)

While Petitioner suggests that he did not receive this evidence to support his claims until December 30, 2024, as noted above, "[t]he question . . . is not when [Petitioner] first learned of the new evidence; it is when [he] should have learned of the new evidence had [he] exercised reasonable care." *Townsend*, 99 F. App'x at 608. Given that Petitioner has challenged the legitimacy of the felony complaint issued against him for almost a decade prior to filing his § 2254 petition, Petitioner's claim

22

falls flat.  Indeed, a review of the documents Petitioner has provided supports the conclusion that Petitioner reviewed the complaint, the information, and the discovery materials, including the Berrien County Sheriff's Department incident report, years before the successful FOIA request was made. Petitioner simply provides no explanation as to why he could not have obtained this information well before now. Accordingly, the Court concludes that Petitioner has not demonstrated entitlement to belated commencement of the limitations period under § 2244(d)(1)(D).

In sum, the limitations period expired as of April 5, 2017, and Petitioner has failed to show cause to excuse the tardy filing of his § 2254 petition.  The Court, therefore, will issue a judgment dismissing the petition with prejudice.

## III.    Certificate of Appealability

The Court must also determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*

Petitioner's application is untimely and, thus, barred by the statute of limitations.  Under *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable

23

whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Both showings must be made to warrant the grant of a certificate.  *Id*.

Reasonable jurists could not find it debatable whether Petitioner's application was timely.  It is filed more than one year after the underlying judgment became final and he offers neither reason nor excuse why it is late.  Therefore, a certificate of appealability will be denied. Moreover, the Court concludes that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter an order denying a certificate of appealability as well as a judgment dismissing the petition with prejudice as untimely.


Dated:  September 15, 2025                    /s/ Phillip J. Green
                                             PHILLIP J. GREEN
                                             United States Magistrate Judge

24